The next case on the docket is this case on the docket 2-16-0277, People of the State of Illinois v. Jameson L. Moore, Defendant Appellant. I bring on behalf of the Defendant Appellant, Mr. Jamie L. Montgomery. I bring on behalf of the Supreme Court Appellant, Mr. Stephen A. Proctor. Ms. Montgomery, on behalf of the Appellant, you may proceed. Good morning, Your Honors. Good morning, Counsel. As noted, I am Jamie Montgomery, Assistant Appellant Defender with the Office of the State Appellant Defender, appearing today on behalf of Mr. Jameson Moore, the Defendant Appellant. Before I begin, I just want to note that in this case there are three characters with the last name Moore. There's a police officer, there's Jameson, and there's his cousin, Adrian. For the sake of clarity, I'm just going to refer to the defendant and his cousin as Jameson and Adrian. So we've raised two arguments challenging the sufficiency of the state's evidence in this case. And I do know the state's, sorry, the court's order directing us to be ready to discuss Burlington. Before I get into that, I want to touch on the argument that the state failed to prove the defendant accountable for any of Adrian's actions. Now, in this case, the entirety of the offense is on video. And that being so, this court is in the same position to view that evidence as the court below, and therefore does not have to defer to the findings with the same evidence. Is it your position that the trial court only took into consideration the video? No, there was testimony from the office. There's three officers who testified, but they testified about, for the majority, things that they viewed on the video. But my position is that for the... Was your client's explanation about his money or not having any money on him, was that on video? No. So it wasn't. Right. I'm not saying that all of the evidence can be viewed that way, but I'm saying that this court can and should view the video to see for itself, given that the state misrepresented the evidence in their closing argument. And as noted in the reply brief, there were some mischaracterizations of evidence in the state's brief. But your argument obviously goes deeper than that, because you are delving into this very interesting issue as to the impact of the Bradford decision on this case. Correct. But what about its impacts at all? Right. So Johnson answered the question of whether or not Bradford extends to this case. Temporarily. Temporarily. And now we have the Burlington decision. In your brief, you concede, do you not, that the court in Bradford was dealing only with remaining within? Correct. The defendant in Bradford was only charged with remaining, with burglary by remaining. So the court did not have the issue of burglary by entering. Well, the court did comment on Weaver in the Bradford decision and expressed its disapproval of the state's argument. The state was trying to extend Weaver to remaining within. And the Supreme Court made clear that no, they're separate, they're distinguishable. Remaining within cannot be, as the state argued, that the limited authority doctrine applies to remaining within. That was the distinction, correct? The court's distinction on Weaver, they did, I agree that the court said that there are two different, the burglary is two different forms. And they were addressing the second type, not the first type. Correct. But the court never explicitly stated that this holding only applies to remaining. And the court has certainly said in the past, very clearly, when they're limiting their holding to the facts of that case or to this particular part of the statute. Weaver does not address retail theft for two reasons. One, the retail theft statute didn't exist when Weaver was decided. And two, Weaver isn't a, would never have been charged as a retail theft case because Weaver happened in a laundromat, not in a retail mercantile establishment. How about People v. Kelly, a 2016, a 1916 case that is cited in Bradford 4th District opinion? Have you read Kelly? I'm not familiar with that case. Here's what happened in Kelly. Kelly was an open drugstore, open for business. The defendant, Kelly, comes in, gets in line to buy circus tickets and commits a pickpocket of the person in front of him. He's charged with burglary. And the court in Kelly said, as has always been the law in Illinois, even before the retail theft statute, that the critical element is the intent at entry. That hasn't changed, has it? No. And this doesn't, the holding of, extending the exceeding physical authority test that the court set out in Bradford, applying it to entry, doesn't change the holding in Kelly. Because in that case, again, he didn't shoplift from a retail store. He pickedpocketed someone. Yeah, but it was his intent. Theft is theft. And just like he could be charged with robbery, he could be charged with theft on a person or simple theft. But the issue is, what was the intent upon entry? Would we extend, Bradford was extended in Johnson to entry. So what about other felonies that people intend to commit upon entry into a retail establishment, like murder? Or like a mall shooting? How about kidnapping? Robbery? Forgery? Those could still be charged as burglary. But just not retail theft? Correct. The legislature's passage of the retail theft statute was intended to occupy the field of shoplifting cases. As noted in Bradford, the legislative debates, they referred to the fact that this was passed as an intention to address the growing problem of shoplifting. And anecdotally, around that time in the late 70s was the rise of big box stores and malls and that sort of thing. And it changed from having maybe a mom and pop store where when you walk in, you can see everywhere in the store. So the retail theft statute was a pointed, intended to specifically target shoplifting offenses and have them prosecuted differently than burglary cases. And we know that because the shoplifting statute is all-encompassing. It provides for a differentiation between somebody who comes in and steals a candy bar and maybe it's their first offense or that sort of thing, as opposed to somebody who has a record or based on the amount of what they steal, that sort of thing. And it covers situations where somebody enters the store with the intent because it also covers like somebody walking in with a theft detect, you know, like bags that prevent somebody. Booster bags. Yeah. You know, the retail theft statute very clearly is a legislative statement of this is how we're going to prosecute shoplifting. Isn't the commentary in Johnson by the 3rd District a public policy determination? About how to interpret it? About how the retail theft statute should be enforced vis-a-vis burglary. Johnson court said, we suspect that it is a minuscule percentage of shoplifters who form the intent to steal only after entering the store. Where does that come from? The court's suspicion based on common knowledge. It's not common knowledge, is it? Is it common knowledge that people who steal from stores are always intending to steal upon entry? Did they have a crystal ball? No, but I think it's a reasonable assertion. Can we set that aside for just a second? And I don't dispute the efficacy of some of what you're saying. Looking at Weaver, Illinois Supreme Court, 1968, they clearly said, authority to enter a business building or other building open to the public extends only to those who enter with a purpose consistent with the reason for building is open. What it says is patrons of a business lack the authority to enter if they intend to commit a theft inside the establishment. And we've already ascertained that Bradford didn't intend to get into that type of burglary. So are you saying that the Supreme Court is going to overrule all of these years of precedent by implication? No. Okay. So then how does that help your position that Bradford should apply to this case? Because the reasoning of Bradford, the analysis of why the test should be exceeding your authority, whether or not the defendant exceeded his physical authority to be present in the store, applies equally to both burglary by entry. Why did the Supreme Court say that, then? Because it wasn't put before them. And because Weaver didn't involve a retail establishment, they didn't have, you know, extending Bradford to cover burglary by entry doesn't overturn Weaver. They're different situations. And it's not, and as Justice Paquette said, it's not going to change the situation where somebody enters a retail establishment and intends to commit a murder therein. That would still be a burglary. But... Well, you sort of alluded to some public policy reasons. Correct why Bradford should be extended to this. So my question to you is, isn't that an area that's more reserved for the legislature than the judiciary? Should we be speaking for the will of the people? Should we be announcing public policy decisions? I, respectfully, Your Honor, I believe that is within the Supreme Court's authority to do so. I agree with you. Supreme Court. Correct. Or the appellate court. Right. And this appellate court should follow the reasoning of Johnson and extend Bradford to burglary by entry. What about Burlington? Burlington, I think, is well-reasoned. Burlington comes to, obviously, the opposite conclusion. Doesn't that? Yes. So why doesn't that follow Burlington as opposed to Johnson? Well, because Burlington starts with the flawed premise that Weaver already answered this question. Because Weaver did not answer this question. And Burlington starts off exactly from there. And as I've said here, that Weaver, you know, Weaver survives Bradford, but Weaver doesn't apply to the situation where we have a retail theft. And Burlington— Wouldn't we have to look at the retail theft statute in a statement from the General Assembly limiting the application of burglary or excluding the application of burglary? I'm sorry, I don't understand your question. Wouldn't we have to—wouldn't the General Assembly have to exclude burglary for—as an offense in connection with retail theft? Not necessarily. Granted, it would be a lot easier for all of us if they did that. But the inaction of—so Burlington—I'm going to step back and kind of tie in with Burlington. So Burlington argued that the—or stated that the legislative intent here should be—I'm sorry, I'm going to start over. So the legislature here, they didn't acquiesce in the Weaver decision. What the legislature did was, following Weaver, there was the retail theft statute. And from that, we can infer that the legislature's intent was to not include shoplifting cases in the burglary statute. Why wouldn't we just infer that the retail theft statute was designed to delineate different levels of theft in terms of the value that had to have been proved? When it was passed, it was substantially less than theft, correct? I—sure. I'm not positive, but if that's—yeah, I trust that you are correct. Yeah, I am that old. I remember when it started. Go ahead. So your—so the question would be, why would that not just be different levels of theft? Well, the burglary statute does not have any delineation based on value. Right, but my point is, the retail theft statute, it doesn't exclude burglary. It doesn't say, this is a kind of theft that doesn't follow or doesn't fall under the burglary statute. Which it could, if that's what the legislature intended. Mm-hmm, yes. I mean, it is possible for, you know—we know from the, you know, they're not the exact same act. I'm not arguing that at all. I'm not saying that one is the retail theft is a lesser included of burglary. They have different elements. Miller makes that clear. That was a different question that was being analyzed there. Here it says legislative intent, statutory construction issue. And the Supreme Court has said that burglary by remaining is, you know, circumvented. That retail theft cannot be burglary by remaining. And it would make—it would lead to absurd results if, within the same statute, the legislature meant for without authority to mean two entirely different things. So, in the statute, it says that you enter without authority or you remain without authority. And it would lead to absurdities if it was meant that the same phrase means two different things,  You know, entry—the intent is the difference in when the intent is formed. If the intent is formed before entry into the building, and you enter that building at the time with the intent to commit a theft, then that's very—that's not easy to prove. And as the cases will show, ordinarily they're for professional shoplifters or for people with extensive criminal histories, which is in deference— And the court has talked about the prosecutorial discretion that's involved, and prosecutors have the discretion to charge the various crimes that might fit the facts of the case. But on another point, would you agree that the burglary statute has undergone many revisions since it was understood early on in the common law? Would you agree? Yes. And now we have burglary to watercrafts, burglary to an automobile, burglary to— Daycare centers, yes. And the comments in Johnson in reference to the model penal code, they have little application to burglary to a vehicle, burglary to a motorcraft, burglary to a railroad car, correct? I mean, an unoccupied vehicle, you're not going to terrorize the occupants, correct? But it's still a burglary if you enter a vehicle with the intent to commit a theft. Right, but the possibility of terrorizing occupants is there. And— The possibility of terrorizing people in the store is there. When a thief gets caught, sometimes the security gets stabbed, punched, thrown to the floor, knocked down escalators. That happens. Yes. So it's safety and security of shoppers, employees, security personnel. It's also at issue in retail stores. Would you agree? Yes. But I believe the legislative intent here was that the—or I should say that the— Here, the retail theft statute contemplates these more run-of-the-mill shoplifting cases as occurred here, where somebody walks in, takes— where they walk into a store during business hours when they have the same right as the public to be there. They walk up to a shelf or wherever that is within the public space and leaves while the store is still open. Those things— With a diaper bag. The liquor was put into a diaper bag, correct? In a bag, yes. And, you know, the fact that they put it in a bag, whether you put it in a bag or put it in his pants, it's the same act. He walked off with goods that were displayed for sale. Now, talking about legislative intent, let me go back to that for a moment. Both the burglary statute and the Weaver decision existed before the retail theft statute was enacted, correct? Yes. And yet the legislature has chosen not to amend the burglary statute to carve out the exception that you're advocating that was in Johnson. They could have done that. So how do we get this public policy, when they themselves could have eliminated this whole problem and have chosen not to all of these years? Well, there hasn't been a Supreme Court decision—to my knowledge, there has not been a Supreme Court decision extending Weaver to a retail theft situation. Granted, there have been some appellate court decisions that follow Weaver and apply it to— All of the appellate court decisions have followed Weaver. Right. Except for Johnson. Right. Because Johnson is the first case post-Bradford where the Supreme Court said, this is the test, this is what the statute means, this is what the legislature intended. And to this point, the legislature has not amended either statute in response to the Bradford decision. Let's assume this is a factual scenario. You alluded to sometimes absurd results, good results if we don't apply to Bradford, if we don't extend Bradford. So if somebody announces in the presence of a number of witnesses, I'm going to go to this store and I'm going to enter there with the intent to commit—steal this computer or whatever, it's over, you know, $500. According to you then, that person could as a matter of law never be convicted of burglary because it doesn't matter if they enter with the intent to commit the theft. They're immune under this extension of the law. How would you ever know, you know, what they're intending to steal? Well, the— They're not immune under the law. They could be charged with a retail theft. But they could be convicted of burglary if they did that, even though they announced in advance their intention to go in there and commit a theft over $500. Correct. Doesn't that strike you as being a little weird? No. How about this? How about if the same scenario and we charge them just with theft and burglary? It's theft. I think that the court's ruling in Bradford still applies to that situation where in that, you know, when you walk into a retail establishment, you have the, you know— Whether you form the intent before you walk in or after you walk in, if you steal an item off the shelf from a public area, this doesn't include, like, going to an area you weren't supposed to be. It doesn't include a situation where you've been told, hey, you've stolen from us before and you can't come in here. If you've been given a trespass notice or have some other reason why you are not authorized to be in that store, that's burglary. But if you have not—if you are just Joe Schmo off the street or Adrian Moore walking into Walmart and you steal some stuff, that is not a burglary. Do we extend that down to residential burglaries where friends or relatives are coming in and, you know, you have authority to be in the home, in the dwelling, but your intent is to steal a checkbook? No. The residential burglary is a separate issue. It is, you know, grounded in the sanctity of the home. Why? You can make the same argument there, couldn't you? Limited authority has been applied to residential burglaries. It's been applied to all different types of burglaries. Well, I see my time is up. Yes, we plan on doing that. Thank you. You'll have a chance to reply, too. All right. Mr. Rogers on behalf of the people. Good morning, Your Honors. Counsel, may it please the Court. My name is Stephen Rogers, and I represent the people of the state of Illinois. Your Honors, I'll touch on one of the reasons given in Johnson as a policy matter, why this should be extended, and that is the purpose of the burglary statute. I think historically that would be the case when we had the requirements of breaking and entering the dwelling place of another at nighttime. That's exactly what the purpose of burglary was. But this is a statutory interpretation question. And it's clear the legislature has broadened burglary by getting rid of all those requirements I just stated. They've also made retail theft tougher to prove because after the clear commission meetings that lasted two years, they increased the retail theft value for a felony from $150 to $300. So it's even tougher to prove retail theft now than it was, correct? Correct, Your Honor. And the other problem, I think, with Johnson before I get to Burlington is it's also not statutory interpretation. It's a carve-out because they're not reading building to not mean retail establishment, and they're not reading without authority to get rid of the limited authority doctrine. If the person intends to commit any other felony or any other crime, it is still without authority. But if it's retail theft specifically, then all of a sudden the limited authority doctrine doesn't apply. And a lot of the reasons are policy reasons, as Your Honor has noted. Should we be getting any policy reasons? Exactly, Your Honor. Your Honor, I was struck by the Johnson court just at the end of the paragraph saying, we suspect it's a minuscule amount. I'm thinking, you know, maybe sign a law review article. There may be studies done. I'm not aware of what percentage of people go in and opt to commit the retail theft after the fact. But the state's position, of course, is that Burlington was the better reasoned decision. Bradford, by its own terms, they didn't even condemn Weaver. You know, even if they say we're discussing remaining within, they could have said, you know, Weaver's kind of outlived its usefulness. It's been extended too far. Nothing of the sort. Essentially, they just said it's unworkable. Once the person lawfully enters, it's unclear what they would do to have their authority implicitly withdrawn. And, of course, Weaver was decided in 1968, but the retail theft statute was enacted in 1975. It's not exactly a recent development. And I noted one example, at least, where there was a problematic interpretation between residential burglary and burglary, where they were interpreted to be mutually exclusive. And the legislature comes right in to clarify that burglary is a lesser included of residential burglary. So even if you can't prove dwelling place, you can still get the conviction for burglary. And the same can be said for the concerns of prosecutorial discretion. Defendants cited Christie, which concerned a statute, armed violence, and aggravated kidnapping, which had identical elements. And they said there's no reason for prosecutorial discretion in that area. However, the Supreme Court of People v. Miller indicated that burglary is the entry, the criminal intended entry, and retail theft is the take. And the legislature can certainly intend to punish and kind of go after the full array of criminal conduct. So if you could hold it and succinctly tell us, so why shouldn't Bradford be extended to this scenario? Your Honor, Bradford should not be extended because the limited authority doctrine has been around long before People v. Weber, and the legislature has not done anything to undermine the limited authority doctrine, regardless of if the conduct is retail theft, forgery, or any other higher possibility. So you're saying if we're speaking public policy, it weighs in favor of not extending it? Yes, sir. How would you address one of the last paragraphs in Bradford? Conversely, an individual who enters a building lawfully, shops, lifts, merchandise within areas which are open to the public, then leaves during business hours, is guilty of ordinary retail theft. How would you address that? Your Honor, by looking at the word lawfully, if you make the lawful entry, you're not entering with a criminal intent, and then you commit any number of crimes within, you're not guilty of burglary, you're guilty of whatever crime you committed, which in Bradford was retail theft. Your Honor, do you have any other questions? Neither party cited the case that I mentioned, but the 1916 case, the General Assembly, and I'm sure the Supreme Court in Bradford was aware of that case law because it was cited by the 4th District in Bradford, the Kelly case. In that case, the court said the intent is the essential element of the crime of burglary, so it's the intent at entry, which is not easy to prove. Absolutely, Your Honor, and that's it. You have the intent at entry, it doesn't matter what you do after. And in this case, what was the evidence of intent at entry, addressing the sufficiency of the evidence point? What was the evidence of the defendant's intent at entry? Your Honor, the defendant was dropped off with his cousin. They enter together. His cousin, Adrian, was carrying a diaper bag. The defendant leads him to the liquor section, remains there momentarily. On the video, it appears they converse. There's some verbal communication between the two. And then eye contact, the defendant starts to leave the area, and as the defendant leaves, Adrian commits the theft. There's some alleged flak after the theft, too, isn't there? Absolutely, Your Honor. To be quite honest, some of what happens inside, you could come up with an innocent explanation. He says later that his cousin didn't know where the liquor section was, but he doesn't do anything. He doesn't enter the interior of the store. He explains that he was looking for snacks, never goes to the snack section. Says he doesn't have his wallet. He has a wallet on him. As soon as he approaches Michael Eby, the loss prevention guy at Walmart, he takes off running. And he doesn't say that he was with his cousin, Adrian, until days later. He says he was by himself, and then he says he was with James. And I think any argument that there was an innocent explanation for what he was doing there is dashed by what he says and does after the fact. Anything further? Okay. All right, thank you very much. Thank you, Your Honor. Ms. Montgomery, you may address the court as well. So addressing the court's questions just now, I'm turning back to my earlier point about the sufficiency of the evidence here. What happened was Jameson and Adrian were indeed dropped off at Walmart. They walked in. Jameson showed Adrian where the liquor room was. On the tape, you do see them have some sort of exchange, which could very easily have also been, all right, man, I'll see you in a minute. Because what we see on the tape is that Jameson walks out of the liquor room, leaves the liquor department. He doesn't stand as a lookout as Eby originally stated. In fact, Eby testified after seeing the video in court, oh, no, I was wrong about that. So you see Jameson leave the area. He walks into the store. The testimony was that there wasn't cameras in the area. Once he got out of the camera view by the registers, they didn't have an idea of where he was going. But he was gone for a minute or so. And then he comes back into the register area, walks up by where the customer service desk is, looks at an ATM where everyone knows there's cameras at an ATM. And so he then moseys back towards the liquor department, stops in briefly, and then walks out and slowly leaves Wal-Mart. We can say that some of the actions inside the Wal-Mart were ambiguous. But when you consider the totality of the evidence and the consciousness of guilt evidence, he denies knowing. Why would you deny knowing the other person? Why would you run? Isn't that something the prior effect could take into consideration? Is that innocent construction with that? Those are, indeed, things the prior effect can consider. However, those do not amount to accountability. We know from the record that Jameson has had police contact in the past. And when he walks out and sees that his ride is gone, he starts walking back. And then at some point, yes, he does run. We don't know why he ran. It could be that he thought he saw his ride across the parking lot. It could be that he was running to catch a bus because now he doesn't have a ride. We don't know. And there isn't enough here to say that he was fleeing because there's no evidence that he knew what had happened. He, at that point, you know, there's no evidence that he knew where anybody was other than the fact that the car he came in was no longer there. And just the fact that, you know, he didn't cooperate with the police or gave some inconsistent statements doesn't equal accountability. But he denied even being in the store with the other person, didn't he? Initially, didn't he deny when he was first confined? I thought the evidence was that he denied knowing. He didn't deny being in the store. I think he denied knowing. Being with that person. Of going in the store with somebody else, right? Right. But, you know, he was under no obligation to cooperate with the police. It could be that he doesn't. We know that. True, but once you make a statement, you're stuck with the plausibility of it. Right. But, you know, had I been there or had counseled him, they would have counseled him to say something different or interact differently with the police, but that's not what we have. And he didn't make any concessions or make any statement that implies that he knew what Adrian had done or knew what Adrian was going to do or that he in any way assisted him in the commission of any offense. You mentioned, to get to the other point about whether or not Bradford should be extended to retail theft based upon intent at entry, what would have been the charges if burglary was not an available option? Retail theft. And based on his record, enhanced? Yes. And what class felony would that have been? I'm not sure, Your Honor. Probably a three or a four, right? Perhaps, yes. So he would have been eligible for at most two to five years. Did he have a prior class three or two? I didn't write the briefs in this case, Your Honor. I'm not as familiar with the record as I'd like to be. In other words, for a recidivist and he steals less than $300, the state's hands would pretty much be tied. They wouldn't be able to send a person to the penitentiary for a lengthy sentence. They're not tied. But they're limited. They're limited to what the legislature has deemed appropriate punishment for a recidivist retail theft, a recidivist shoplifter. The retail theft statute acknowledges that there is a difference between shoplifting and more nefarious burglaries that one might imagine, and that in the situation where somebody walks into a store and steals a candy bar, which comes up in a lot of cases, that there is some injustice and perhaps shocking the public that might go on that a person who steals a candy bar could be charged as a class two felon or as a misdemeanor. And the retail theft statute acknowledges that there are different situations within retail theft where you might want to punish someone where more punishment is necessary. But let's say it's a proportionate penalties argument, correct? No, I'm not making a proportionate penalties argument. It sounds like that's what you're arguing. I'm not arguing that, Your Honor. I'm not in any way arguing that. I'm arguing that the legislature recognized that there's a difference between shoplifting and between burglary and intended to occupy the field of retail theft and all shoplifting cases as retail theft rather than burglary. For the reasons stated in my brief, and if this Court has no further questions, we'd ask this Court to reverse Jameson's convictions, both convictions, or alternatively reverse his burglary conviction. Thank you. All right, thank you, Ms. Montgomery. I'd like to thank both counsel who is voting for the quality of their arguments. The matter will, of course, be taken under advisement. And a written decision will enter in due course. We stand adjourned, subject to call.